## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DARREN L. CORBETT,**

      **Plaintiff,**

**vs.**                      **Case No. 4:23-cv-00141-MW-MAF**

**SGT. HALL, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This Cause is currently before the Court upon the motion for summary judgment filed by Defendants Hall and Traylor. ECF No. 42. Plaintiff, Darren L. Corbett, filed two pleadings in response: (1) a sworn "declaration" and (2) an unsworn "response." See ECF Nos. 46, 47. Corbett, a prisoner proceeding *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement as violative of his rights under the Eighth Amendment. ECF No. 1. Corbett's amended complaint is the operative complaint. ECF No. 7.

After careful review, for the reasons stated below, Defendants' motion for summary judgment should be **GRANTED**; the case should be **CLOSED**.

## I.   Corbett's Operative Complaint, ECF No. 7

Corbett sued two prison officers employed at Liberty Correctional

Institution, Sgt. Hall and Sgt. Traylor, in their individual capacities, and alleged they were deliberately indifferent to his food allergy, did not ensure he received the correct food tray to accommodate for the allergy, and refused him medical care when he suffered an allergic reaction. ECF No. 7. Corbett is allergic to wheat products. Id., p. 5. From March 7, 2023, through March 22, 2023, Corbett was assigned to the confinement unit. Prisoners in confinement have their food trays delivered directly to their individual cells.

On several occasions during the first few days in confinement, Corbett informed Traylor, Hall, and other officers he has a wheat allergy and showed his diet pass to explain his need for a special diet tray. Id., pp. 5, 7. From March 7 through March 11, Corbett only received regular food trays. Id., p. 5.

On March 9, Hall delivered a regular dinner tray to Corbett. Id., p. 7. Corbett reminded Hall of his allergy and asked him to call food service to get the proper tray, but Hall responded, ". . . you either eat that or starve." Id., p. 7. Corbett does not allege there was nothing on the tray he could eat. On March 11, Traylor brought Corbett a regular lunch tray containing wheat products. Id., p. 5. Corbett reminded Traylor of his allergy and asked him to call food service to order the proper tray, but Traylor cursed at Corbett and said he would just "get a regular tray." Id. Corbett insists that because Traylor was unwilling to call food service, he was forced to consume the wheat

products and then suffered an allergic reaction – "a swollen and painful, itchy red rash on his arms, thighs and torso." Id., pp. 5-6. Corbett declared a medical emergency, but Traylor denied Corbett's request for medical attention.[1] Id. Aside from the rash, Corbett does not allege any other physical harm or injury, nor does he allege that he was not provided with otherwise nutritionally adequate meals during his time in confinement.

During the fifteen-day confinement, Corbett received thirty-two regular trays which did not accommodate his wheat allergy. Id. Corbett claims the actions of Traylor and Hall violate the Eighth Amendment. Id., p. 9. Corbett seeks declaratory relief; a total of $210,000 in compensatory damages for physical and emotional harm; $70,000 in punitive damages against each defendant; and any other relief to which he may be entitled. Id., pp. 10-11.

## II.  Defendants' Motion for Summary Judgment, ECF No. 42

Hall and Traylor argue they are entitled to summary judgment as a matter of law because qualified immunity protects them from being sued in their individual capacities where they did not violate any clearly established right. ECF No. 42, pp. 7-8. Defendants argue there is no evidence to support Corbett's allegation that he declared a medical emergency when he suffered

---

[1] Corbett repeats the allegations against Hall and Traylor on pages 8 and 9 of the complaint.

an allergic reaction, aside from his own testimony. Id., pp. 8-9. Furthermore, communicating, or the lack of communicating, Corbett's dietary restriction to food service is a discretionary duty. Id., p. 9. According to Defendants, Corbett's testimony is self-serving. In their sworn responses to Corbett's interrogatories, they maintain they communicated Corbett's food allergy to food services and took every measure in their power to ensure the proper food tray was delivered. Id.

Defendants argue there was no Eighth Amendment violation and mere negligence fails to state a claim. Id., pp. 10-11. Specifically, Corbett's wheat allergy, if left unattended, does not pose a substantial risk of serious harm, was diagnosed as minor, and does not require medical attention. Id., pp. 11-12. Corbett admitted that, on occasion, he knowingly ignored his allergy to consume food, like brownies, which contain wheat. Id., p. 12. Corbett admitted to eating wheat products for his own enjoyment after weighing the risks. Id., pp. 12-13. In addition, Corbett testified in his deposition that even when he did not receive the correct diet tray, there is other food in a regular tray that does not contain wheat, which he was able to eat. Id., p. 13.

Finally, during a subsequent placement in the confinement unit, Corbett admitted that Traylor made every effort to ensure he received the

proper tray. Id., p. 14. According to Defendants, Corbett cannot show that they did not request the proper tray, fails to state a claim of deliberate indifference, and does not show that he had a serious medical need.

## III.   Corbett's Opposition, ECF Nos. 46 and 47

In opposition, Corbett filed a sworn "declaration" along with an unsworn "response." ECF Nos. 46, 47. Each is described in turn.

### A. Corbett's Sworn Declaration, ECF No. 46

In the declaration, Corbet simply reiterates his claims alleging that Defendants refused to accommodate his dietary restrictions for the lunch and dinner meals for the fifteen days he was in confinement. Id., pp. 1-3. Corbett explained the process of having meals delivered to confinement. Id., p. 4. The exact number of inmates housed in confinement changes frequently; therefore, before each meal is served, a supervisor places orders to food service based on the "head count" of regular trays or diet trays to be prepared for delivery. Id. Without placing this "order," food service would not know how many food trays to deliver to a confinement unit. Id., pp. 4-5. Corbett alleges no physical harm aside from the rash and does not claim the food trays were otherwise nutritionally deficient.

Corbett's declaration references several exhibits, namely, his grievances on the issue and his deposition testimony identifying other inmate

witnesses. Id., pp. 5-6. One grievance alleged that Corbett was served one meal containing only wheat products -- "2 slices of bread, pasta, and a breaded meat patty." ECF No. 46-3, p. 2.

Corbett asks the Court to direct the inmate witnesses to submit sworn statements, apparently, because inmates are not allowed to correspond with each other. Id., p. 6.   In short, Corbett is asking the Court to conduct discovery on his behalf. Id. After two extensions, the discovery period expired January 31, 2024. ECF No. 36. This case has been pending since April 2023. Corbett had sufficient time to secure witness testimony to support his claims. To the extent Corbett requests additional discovery or an extension of the discovery deadline, such a request is untimely and is due to be denied.

Even if the request were timely, this Court cannot conduct discovery for Corbett. Courts "will not act as *de facto* counsel for a *pro se* litigant." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998). Individual litigants have a right to represent themselves and to proceed *pro se*, but the responsibility for representation lies with them alone.

B. Corbett's Response, ECF No. 47

Corbett's "Response" is unsworn and repeats his allegations. ECF No. 47, pp. 1-2, 5. Corbett copied some of the questions from his request for admissions along with Defendants' responses relating to their knowledge of

his food allergy. Id., pp. 3-4, 9-11, 22-23, 25-26. Corbett now maintains the thirty-two regular trays were only served during Defendants' work shifts. Id., p. 4. Inmates in confinement must have their meals ordered by the officers for delivery to the unit and, subsequently, their cells. Id., p. 6. Defendants were required to order his "no wheat diet trays" prior to delivery. Id., p. 8.

Corbett reiterates his request to the Court to obtain sworn statements from inmate witnesses. Id., pp. 12, 15-16. For the reasons previously stated, the request should be denied.

Corbett insists that Defendants are not entitled to qualified immunity because they were not performing a discretionary function, they were advised of the "medical risks" of his allergy, and their statements to Corbett amounted to "cruel and unusual" punishment. Id., pp. 18-19, 22. Corbett argues Defendants were not performing a job-related function in their unwillingness to accommodate his dietary restrictions. Id., p. 23. In Corbett's view, delivering trays containing food items to which he was allergic was "cruel and unusual" punishment. Id., p. 25. Finally, Corbett claims his food allergy is a serious medical condition because it was diagnosed by a physician, he previously received Benadryl to treat an allergic reaction, and his condition is considered chronic because it is ongoing and requires treatment.

## IV.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for the motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the

initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## V.    Discussion

In this case, Corbett alleges violations of the Eighth Amendment when (1) Defendants served him regular food trays containing allergens rather than a diet tray and (2) Defendant Traylor denied Corbett medical treatment for a single allergic reaction, the result of eating wheat products from the regular tray. Defendants' motion and the evidence provided by both parties demonstrates Defendants are entitled to summary judgment.

A. <u>Food Trays with Allergens Do Not Violate the Eighth Amendment.</u>

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prisoners be afforded "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)." To prevail, a plaintiff must prove a (1) condition of confinement that inflicted unnecessary pain or suffering (the objective component), (2) deliberate indifference to that condition (the subjective component), and (3) causation. <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted). The objective component requires a showing the condition is "extreme," "pose[s] an unreasonable risk of serious damage to his future health or safety," and that the "risk of which he complains is not one that today's society chooses to tolerate." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (internal citations omitted).

The subjective component requires a showing that prison officials were deliberately indifferent to a known, substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 843. To demonstrate deliberate indifference, a prison official's conduct must be "more than mere negligence." <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003). It must be a culpable state of mind to inflict pain or harm unnecessarily and wantonly upon a prisoner. <u>Wilson v. Seiter</u>, 501

U.S. 294, 302-03 (1991). Finally, a plaintiff must show that defendants' "acts or omissions were the cause -- not merely a contributing factor -- of the constitutionally infirm condition" and that his injuries were proximately caused by the deliberate indifference. LaMarca, 995 F.2d at 1538-39.

A claim alleging the deprivation of food may only rise to the level of a constitutional violation where the prisoner is denied the "minimal civilized measure of life's necessities." Wilson, 501 U.S. at 303. "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).[2] Without an allegation that some specific physical harm or adverse physical effect occurred or the denial of a nutritionally and calorically adequate diet, there is no Eighth Amendment violation. Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999).

A medical condition does not have to be life-threatening to be considered serious. Although the dangers of an allergic reaction to certain foods can rise to the level of a "serious medical condition," Corbett must show more than a mere exposure to or the delivery of allergy-triggering foods. He must offer facts that demonstrate Defendants prevented him from

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. Prichard, 661 f.2d 1206, 1207 (1981).

receiving a nutritionally adequate diet.

Neither party submitted medical records showing whether Corbett has a food allergy. Nonetheless, Defendants do not dispute the issue. Corbett did not allege that all the food he received contained allergens or that the food he received was nutritionally deficient or insufficient so that he could not maintain his health. Corbett does not suggest any weight loss or that he suffered any symptoms of malnutrition. Corbett does not even allege that he could not consume most of the food he was offered. Only one of the meals served contained exclusively wheat items.

Nothing in the complaint or the record indicates that Defendants failed to accommodate Corbett's food allergy in a way that would have resulted or did result in any nutritional deprivation. Corbett simply does not offer any factual allegations which plausibly infer that Defendants posed "a substantial risk of serious harm." In fact, Corbett admitted that is not the case.

At deposition, Corbett testified that while in confinement he received three meals per day – breakfast, lunch, and dinner. ECF No. 49, p. 21. Corbett explained that the contents of a diet tray meal and a regular meal would sometimes "overlap . . . maybe rice and vegetables, but as far as the main portion of the meal . . . I don't receive any pasta whatsoever . . . So they might have pasta for dinner. I am going to have rice. They might have

a bread patty, I am going to have chicken." <u>Id.</u>, p. 26. Corbett admitted that he was "prepared to go through a period to where it is going to take . . . a couple of days to continue to call food service, tell them I am [in confinement] and they consistently bring me my tray. So, I [was] prepared for that." <u>Id.</u>, p. 30.

Defendants told Corbett they requested the trays, but food service verified the correct tray was provided to him. <u>Id.</u>, pp. 31-32. Corbett believed that Defendants did not make the call to food service but admitted he did not know whether or not they made the call. <u>Id.</u>, pp. 34-35. Corbett maintains "every meal for lunch and dinner did not conform to my specific food allergies." <u>Id.</u>, p. 36. Twice, Corbett did not "receive anything to eat on Traylor's shift." <u>Id.</u>, p. 37. On other occasions, different officers would call to get Corbett the correct tray and within "30, 40 minutes they would bring it." <u>Id.</u> Only the meals that were delivered by Hall and Traylor did not conform. <u>Id.</u>, p. 38.  Corbett stated that Defendants worked five days a week; and, on those days (during the fifteen-day period), he did not receive his diet trays. <u>Id.</u>, p. 38.

Corbett admitted there was some food on the regular trays that he could eat; he could eat the rice and vegetables "without breaking out." <u>Id.</u> Only bread and pasta would trigger Corbett's allergy. <u>Id.</u>, p. 43. By his own

admission, Corbett was not nutritionally deprived so that he was left with no option but to eat the foods that trigger his allergies. Corbett only alleged that the trays he received contained certain foods that he should not eat rather than a substitution to accommodate his food allergy. Corbett maintains Defendants knew about his wheat allergy but did not order the proper tray; so, he was compelled to return the food numerous times.

Contrary to Corbett's opinion, the delivery of regular food trays alone is not a constitutional violation. Only the denial of a nutritionally adequate diet contravenes the Eighth Amendment. Corbett did not contest the nutritional value of his regular tray or allege that any serious injury or harm resulted from an inadequate diet. Corbett's claims that he did not receive his medical diet might, at best, be negligence, but it does not implicate any constitutional right. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986). To the extent Corbett maintains the serious injury or harm was the allergic reaction he suffered, the claim fails as explained in the next section.

B. Corbett's Allergic Reaction Fails to Support an Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need.

There is an "obligation to provide medical care for those who are incarcerated whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Delayed or denied access to medical care for

inmates resulting in physical or mental injury constitutes a violation under the Eighth Amendment. Id. To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." Farrow, 320 F.3d at 1243 (citations and internal quotation marks omitted). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999).

A deliberate-indifference claim contains an objective- and a subjective component. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the prisoner must prove the need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." Id.

Second, the prisoner must prove the defendant had (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. Id. (citing McElligott, 182 F.3d at

1255). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. See Farmer, 511 U.S. at 834 (1970).

Corbett's claims rest on a single instance of an allergic reaction after consuming food products that he deliberately consumed to prove to Defendants he had a wheat allergy. See ECF No. 7. Corbett's own admissions are fatal to his case: (1) the allergic reaction was *de minimis* and (2) the allergic reaction was, unnecessarily, self-inflicted. See ECF No. 49. Each is set forth below.

### 1. Corbett's Allergic Reaction was a *De Minimis* Injury

Corbett stated in his complaint and response that Defendants were on notice of his allergy. In support of his response, Corbett provided a form DC4-650B "Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices," which showed he had a medical risk factor for the use of chemical restraints, but nothing related to his food allergy.[3] ECF No. 46-1, p. 2. The failure to produce medical records does not drive the outcome here, but it does not help Corbett's case that nothing in the record confirms that his food allergy is serious enough to require ongoing

---

[3] Defendants provided the same document to support their motion for summary judgment. ECF No. 42-2.

medical treatment. Corbett does not suggest that is the case.

The history of Corbett's food allergy is relevant. Corbett testified that his allergic reaction appears as "a rash . . . [with] intensive itching, burning sensation . . . whelps or red blotches or marks on [his] torso, . . . legs and . . . arms." ECF No. 49, pp. 13-14. Between 2012 and 2016, Corbett had these rashes on "almost . . . a daily basis." Id., p. 14. For that, Corbett was prescribed Benadryl. Id., pp. 11-12. After 2016, with the correct diet, Corbett became more aware that "a lot of the stuff that I was not supposed to be eating wasn't on the tray." Id., p. 15. After 2018, Corbett would have a "break out maybe once or twice a week" related to eating the wrong foods. Id. This is because, even though Corbett had a diet pass, there were times he would make "a decision" to "eat a brownie or something like that," by "choice," despite knowing it would trigger his allergies. Id., p. 16. From 2018 through *the present*, Corbett admitted that his allergic reaction continues "maybe once a month." Id., p. 17. The last allergic reaction Corbett suffered was "around Thanksgiving," *eight months after the incident at issue here*. Id. Corbett admitted that, at least for the past eight years, he knew he had a food allergy but consciously disregarded it to consume *what* he wanted *when* he wanted.

Even if Corbett consumed a prohibited food, many courts have held

that rashes are too *de minimis* to constitute a "sufficiently serious medical need." See Bailey v. Aramark Corp., 2017 U.S. Dist. LEXIS 141565, *9 (E.D. Ky. Sept. 1, 2017); Dundee v. Rambo, 2011 U.S. Dist. LEXIS 20227, 2011 WL 776161, at *8 (W.D. Ark. 2011) (rash caused by dirty clothing, combined with a lack of towel, underwear, and socks, was insufficient to state a cause of action), report and recommendation adopted, 2011 U.S. Dist. LEXIS 20297, 2011 WL 1086504 (W.D. Ark. 2011). Corbett described his allergic reactions as a rash. Corbett did not allege he would or ever did suffer a severe allergic reaction that required medical intervention such as vomiting or problems with breathing. See e.g., Sweeting v. Miller, No. 7:14CV187, 2015 U.S. Dist. LEXIS 105839, at *8, 2015 WL 4773276 (W.D. Va. Aug. 12, 2015) (finding no claim where the inmate's only allergic reaction to eating a food was a swollen tongue); Gambrell v. Weichart, No. 15-cv-1146, 2017 U.S. Dist. LEXIS 47773, 2017 WL 1194011, at *4 (E.D. Wis. March 30, 2017) (food allergies can be "sufficiently serious when the prisoner shows substantial physical symptoms stemming from allergic reactions" such as "hives, throat swelling, itching, difficulty breathing, vomiting") (collecting cases); Williams v. Arbuckle, No. 14-cv-1289, 2014 U.S. Dist. LEXIS 164362, 2014 WL 6657703, at *3 (S.D. Ill. Nov. 24, 2014) (inmate sufficiently alleged his food allergy was a serious medical need where prison medical

records documented a diagnosis of allergy to beans and eggs, which caused vomiting and problems breathing, requiring treatment with Benadryl).

When asked whether there were any other allergic reactions during the period in question, Corbett responded, "just a rash and the scratching and swelling." Id., p. 42. Corbett's rash was a *de minimus* injury; accordingly, medical care was not required. Even assuming Corbett should have been taken to medical, there are no claims he suffered any injury from the denial of medical care. Moreover, assuming Corbett's allergy was diagnosed by a physician, he offers nothing to show that if his rash was "left unattended" it "pose[d] a substantial risk of serious harm" to him. Brown, 387 F.3d at 1351. Accordingly, Corbett fails to state a claim of deliberate indifference.

2. Corbett cannot seek monetary relief because his injury was *de minimis*.

The allegations in the complaint do not support an entitlement to monetary relief based on mental or emotional harm. Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216

F.3d 970, 984-85 (11th Cir. 2000) (*en banc*)). Furthermore, to satisfy Section 1997e(e), a prisoner must allege more than a *de minimis* physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11th Cir. 1999), reh'g *en banc* granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in pertinent part *en banc*, 216 F.3d 970 (11th Cir. 2000) ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson[4] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant."); Osterback v. Ingram, No. 3:96cv580/LAC/SMN, 1999 U.S. Dist. LEXIS 20944, 2000 WL 297840, at *10 (N.D. Fla. Jan. 12, 2000). Accordingly, a prisoner may not bring an action for compensatory and punitive damages for mental or emotional injury absent a showing of more than *de minimis* physical injury. Holt v. N.W.F.R.C. Annex, 2012 U.S. Dist. LEXIS 143723, *7-81 U.S. at 834; Wilson v. Seiter, 501 U.S. at 298-99. Thus, Corbett's claim for financial damages fails.

   3. Corbett's Allergic Reaction was Self-Inflicted.

   It is well established that a civil suit under Section 1983 requires proof

---

[4] Hudson v. McMillian, 503 U.S. 1 (1992).

of a causal connection between the actions of the defendant and the constitutional deprivation. <u>Zatler v. Wainwright</u>, 802 F.2d 397 (11th Cir. 1986). Here, Corbett's rash -- the only injury alleged -- was self-inflicted, admittedly, just to prove a point. Corbett testified at his deposition:

> the only reason why I ate the food was to bring about those allergic reactions, because I felt that was the only way I could get something, make something happen or get something done . . .
>
> . . .
>
> He handed me a regular tray and I said, Sergeant Hall, can I get a diet tray, man, this is not my tray. Well that is the tray the food service sent. I said, yes, but has got food on it that I am allergic to, man. This is not my tray. I said, order this, did you call food service. He said, order, order, you will eat that or starve. Okay. So I ate the bread. About not even five minutes later I started scratching and itching on my thighs, my arms and chest area like a red, like a red swollen rash and real itchy, really, I mean, I will say painful because it is irritating. Yes.

ECF No. 49. pp. 40-41. This factual issue, essentially, relieves Defendants of liability. Corbett ate a piece of bread to make a point. But Corbett cannot satisfy the first prong for deliberate indifference: neither "the condition of confinement" nor any act by a prison official "inflict[ed] unnecessary pain or suffering"; Corbett did so to himself, unnecessarily. In addition, Corbett cannot satisfy the third prong, because Defendants' acts or omissions were not "the cause" of his allergic reaction. <u>LaMarca</u>, 995 F.2d at 1538-39.

Corbett made the decision to consume the food with the purpose of causing an allergic reaction not out of *necessity* but *strategically*.

To allow Corbett's claims to survive would serve only to offend justice and create an incentive for prisoners to harm themselves in the hopes of pinning a claim against unsuspecting prison officials. See Morrill v. Holmes Cty. Jail, No. 5:15-cv-324, 2018 U.S. Dist. LEXIS 219853, 2018 WL 7082149, at *9 (N.D. Fla. Jan. 30, 2018) ("self-inflicted injuries do not, and cannot, rise to the level of a physical injury under the PLRA."); Argetsinger v. Ritter, No. 08-cv-01990, 2009 U.S. Dist. LEXIS 90192, 2009 WL 3201088, at *4 (D. Colo. Sept. 29, 2009) ("allowing a self-inflicted injury to satisfy the physical injury requirement of § 1997e(e) would create a perverse incentive of self harm in prison populations."). Even in the most extreme cases of self-inflicted harm, "[t]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003). "Absent knowledge of a detainee's suicidal tendencies, . . . failure to prevent suicide has never been held to constitute deliberate indifference." Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). There is certainly no evidence that Defendants were on notice that Corbett intended to induce his own allergic response.

As for Defendants' vulgar language or their comments to Corbett "eat it or starve," while perhaps unprofessional or unkind, it is well settled that the use of profane, demeaning, threatening, or abusive language is insufficient to trigger the Eighth Amendment. See Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989). Ultimately, Corbett failed to present any evidence that Defendants caused the type of actual injury required to support a claim based on deliberate indifference to a serious medical need or cruel and unusual punishment.

## VI.   Defendants are Entitled to Qualified Immunity.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Corbett must show that Defendants violated his constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the plaintiff. Id. The Court is not required to accept a plaintiff's legal conclusions as true.

For the reasons stated previously, Corbett fails to state any claim of a constitutional violation against Defendants; therefore, they are entitled to qualified immunity. Id.

## VII.   Conclusion and Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment should be **GRANTED**, that judgment be entered in their favor of Defendants, and the case be closed.

**IN CHAMBERS** at Tallahassee, Florida, on June 13, 2024.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may

respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).